FILED & JUDGMENT ENTERED
Christine F. Ramsey

July  2  2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **ANTOINETTE SABATER BRAINARD,** | )   Chapter 7 |
| | )   Case No. 22-30656 |
| Debtor. | ) |
| _____ | ) |

## ORDER DENYING MOTION FOR DISBURSEMENT OF
## UNCLAIMED FUNDS

**THIS MATTER** is before the court on the Motion for Disbursement of
Unclaimed Funds (the "Motion") filed by John and Sharon Hinds (the "Hinds") on
April 21, 2026 (Dkt. 347). The Motion seeks disbursement of $30,000.00 from funds
held in the court's registry that were deposited on behalf of the pro se Debtor. The
Hinds contend that the funds lost their exempt status upon deposit into the court's
registry and are therefore subject to levy to satisfy the Hinds' nondischargeable
judgment against the Debtor. For the reasons set forth below, the court concludes
that the Debtor is the person entitled to receive the funds under 28 U.S.C. § 2042
and, therefore, denies the Motion.

## BACKGROUND

The Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 27, 2022. In Schedule C, the Debtor claimed a total exemption of $35,000.00 in her residence located at 420 Zander Woods Court, Mount Holly, North Carolina (the "Property") pursuant to N.C. Gen. Stat. § 1C-1601(a)(1) and (a)(2) (Dkt. 1). On November 6, 2024, the court entered an order converting the case to a case under Chapter 7 of the Bankruptcy Code (Dkt. 120). A. Cotton Wright was appointed as Chapter 7 Trustee (the "Trustee") to administer the bankruptcy estate.

Following multiple unsuccessful efforts by the Trustee to gain access to the Property so that it could be marketed and sold, the court entered an order on August 14, 2025 authorizing the United States Marshals Service to remove the Debtor from the Property (Dkt. 300). The Marshals Service removed the Debtor on August 29, 2025, and the Trustee thereafter took possession of the Property. See Dkt. 316. On January 21, 2026, the court entered an order authorizing the Trustee to sell the Property for $300,000.00, and the sale closed on February 5, 2026 (Dkts. 330, 338). The Trustee reserved $35,000.00 from the proceeds of the sale of the Property for payment of the Debtor's claimed exemptions under N.C. Gen. Stat. § 1C-1601(a)(1) and (a)(2) (the "Exempt Funds") (Dkts. 330, 340).

Although she no longer resided at the Property, the Debtor did not file a change of address with the court despite her requirement to do so pursuant to Federal Rule of Bankruptcy Procedure 4002(a)(5). The Trustee was therefore unable

2

to distribute the Exempt Funds to the Debtor without a current mailing address. See Dkts. 337, 340. Accordingly, the Trustee sought relief from the court, and the court entered an order on April 9, 2026 directing the Debtor to file a change of address with the court within ten days, authorizing the Trustee to mail a check for the Exempt Funds to the Debtor's new address, and authorizing the Trustee to deposit the Exempt Funds into the court's registry pursuant to 11 U.S.C. § 347(a) if the Debtor failed to comply (Dkt. 344) (the "Exempt Funds Order"). The Exempt Funds Order expressly identified the Exempt Funds as belonging to the Debtor and stated that the "Debtor needs only to comply with Bankruptcy Rule 4002 in order for the Trustee to issue a check to her for the Exempt Funds." Id. The Debtor did not file a change of address within the time provided by the Exempt Funds Order, and the Exempt Funds were subsequently deposited in the court's registry (Dkts. 346, 348).

In the Motion, the Hinds request payment of $30,000.00 of the Exempt Funds deposited into the court's registry. The Hinds assert that they hold a valid, unsatisfied, nondischargeable judgment against the Debtor in the amount of $285,153.08 plus interest, pursuant to a default judgment which was entered against the Debtor by this court on April 24, 2025. See Adv. Proc. No. 25-3003, Dkt. 20. The Hinds contend that, once deposited into the court's registry, the Exempt Funds ceased to be exempt under N.C. Gen. Stat. § 1C-1601(a)(1) because the plain language of the statute does not exempt proceeds from the sale of a debtor's residence. Based on that position, the Hinds argue that they are entitled to levy

3

upon the Exempt Funds pursuant to 28 U.S.C. § 2042 to satisfy their nondischargeable judgment. Although the Trustee deposited $35,000.00 into the registry, the Hinds seek only $30,000.00, acknowledging that the Debtor may be entitled to claim up to $5,000.00 of the funds as exempt under N.C. Gen. Stat. § 1C-1601(a)(2).

Although the Debtor did not file a response to the Motion, she filed a "Motion to Claim Homestead Exemption Funds from the Registry Fund" on April 24, 2026, providing her updated address and requesting that the Exempt Funds be released to her (Dkt. 349).[1] The Hinds subsequently filed a response to the Debtor's motion, asserting the same arguments raised in support of their Motion (Dkt. 350). On April 28, 2026, the Debtor filed a Notice of Change of Address reflecting her current address (Dkt. 355).

On May 18, 2026, the Hinds filed a supplement to their Motion, representing that they and the Debtor had reached a settlement regarding the Exempt Funds (Dkt. 360). According to the supplement, the settlement provided that the Debtor and the Hinds would each receive $17,500.00 of the Exempt Funds. A settlement agreement purportedly bearing the Debtor's signature is attached to the supplement.

The court conducted a hearing on the Motion on May 20, 2026. An attorney representing the Hinds, the Trustee, and the Bankruptcy Administrator appeared

---

[1] The Debtor's motion was heard contemporaneously with the Motion on May 20, 2026. At the conclusion of the hearing, the court granted the Debtor's motion and entered an order on May 21, 2026 directing that the Exempt Funds be disbursed to the Debtor from the court's registry (Dkt. 362).

4

at the hearing. The Debtor did not appear. The Hinds' attorney represented that the parties had engaged in settlement discussions regarding the Exempt Funds and asserted that a binding settlement agreement had been reached with the Debtor. Counsel for the Hinds represented that Mr. Hinds discussed settlement with the Debtor's former spouse by telephone. Thereafter, the Debtor communicated directly with counsel for the Hinds by email regarding the settlement. Counsel drafted a settlement agreement and requested that the Debtor have her signature notarized. According to the attorney for the Hinds, the Debtor advised him she was unable to do so because she lacked any form of identification, but she nevertheless emailed him a signed signature page. The Hinds requested that the court, acting in its capacity as a handwriting expert, compare the signature on the settlement agreement to the Debtor's previously authenticated signature to determine the authenticity of the signature and, upon finding the signature authentic, approve the settlement and authorize the proposed disbursement of the Exempt Funds. The Trustee did not take a position on the approval of the settlement and stated that her primary concern was ensuring that any distribution would be properly reflected in the amount of the Hinds' claim so that administration of the case could be completed.

The court declined to approve the purported settlement, noting that no motion seeking approval of the settlement was pending before the court. The court further expressed concern about approving an agreement in the Debtor's absence, particularly in light of the Hinds' attorney's representation that much of the

5

settlement-related communication occurred through the Debtor's former spouse, whom the Debtor had previously accused of forgery. See, e.g., Dkt. No. 106, Oct. 24, 2024 Hr'g Tr. at 5:21–25, 6:1–2. The court therefore proceeded to consider the Motion.

Counsel for the Hinds argued that, pursuant to the plain language of N.C. Gen. Stat. § 1C-1601(a)(1), the Exempt Funds lost their exempt status when the Property was sold and the proceeds were converted to cash. At the latest, he argued the Exempt Funds became nonexempt when they were deposited into the Trustee's bank account, at which point he contended they were subject to levy. The Hinds' attorney asserted that, as holders of a valid nondischargeable judgment, the Hinds were entitled to reach the Exempt Funds pursuant to 28 U.S.C. § 2042, noting that there is case precedent that indicates the Internal Revenue Service (the "IRS") is permitted to levy on nonexempt funds in the court's registry, although he cited no authority for the proposition in their pleadings or at the hearing on the Motion. The Trustee agreed that conversion of the residence to cash did not necessarily preserve the exemption indefinitely but emphasized that the Exempt Funds were deposited into the court's registry only because the Debtor had failed to provide an address where the Trustee could send the Exempt Funds. The Bankruptcy Administrator stated that the Exempt Funds retained their exempt character pending the court's approval of the Trustee's final report, and that the deposit of the Exempt Funds into the court's registry pursuant to the Exempt Funds Order did not alter their exempt status.

6

**DISCUSSION**

Section 347(a) of the Bankruptcy Code governs the disposition of unclaimed funds and directs that such funds be paid into the court's registry pursuant to Chapter 129 of Title 28. 11 U.S.C. § 347(a). Unclaimed funds deposited into the court's registry pursuant to 11 U.S.C. § 347(a) and 28 U.S.C. § 2041 are held in trust pending distribution to the person entitled to receive them. In re Parker, 400 B.R. 55, 59 (Bankr. E.D. Pa. 2009). Such funds may thereafter be withdrawn only pursuant to 28 U.S.C. § 2042, which authorizes the court to disburse such funds to the entitled claimant upon "full proof of the right thereto." 28 U.S.C. § 2042.

A party seeking release of unclaimed funds bears the burden of proving by a preponderance of the evidence a present entitlement to the funds sought. Parker, 400 B.R. at 59; In re Acker, 275 B.R. 143, 144 (Bankr. D.D.C. 2002). In determining entitlement to unclaimed funds, bankruptcy courts generally look to the party on whose account the trustee made the distribution. Typically, that party is the creditor to whom the distribution was originally payable and who, upon a showing of entitlement, is treated as the "rightful owner" of the funds. In re Rush Hampton Indus., Inc., 379 B.R. 192, 194 (Bankr. M.D. Fla. 2007); In re CF Gomma USA, Inc., No. 3:06-bk-1309-PMG, 2009 Bankr. LEXIS 5778, at *7–9 (Bankr. M.D. Fla. Dec. 14, 2009); In re Applications for Unclaimed Funds, 341 B.R. 65, 69 (Bankr. N.D. Ga. 2005).

The record reflects that the Debtor is the person entitled to receive the

7

Exempt Funds. The court's prior orders clearly identified the Exempt Funds as being designated for the Debtor. See Dkts. 330, 344. The Hinds neither objected to the sale motion reserving the Exempt Funds for the Debtor nor objected to the Trustee's subsequent request to distribute those funds to the Debtor upon her filing of a change of address with the court or, if she failed to do so, to deposit those funds into the court's registry. The Trustee's inability to remit the funds directly to the Debtor was solely due to the Debtor's failure, at that time, to provide an updated mailing address. The Exempt Funds Order did not alter the Debtor's entitlement to the funds, create any interest in favor of another party, or otherwise change the purpose for which the funds were being held. Rather, the Trustee's deposit of the Exempt Funds into the registry served as a mechanism to safeguard the Exempt Funds pending distribution to the Debtor. Accordingly, the Exempt Funds should be remitted to the Debtor at her updated address, which is consistent with "the purpose for which [they were] deposited." CF Gomma, 2009 Bankr. LEXIS 5778, at *11 (quoting United States v. Van Cauwenberghe, 934 F.2d 1048, 1062 (9th Cir. 1991)).

The court is not persuaded by the Hinds' argument that the Exempt Funds lost any exempt status they may have possessed and became subject to levy by creditors once deposited into the court's registry. Generally, funds held in the court registry are held in *custodia legis*, which "prohibits any attachment of property in a court's registry that would prevent the court from allocating the property in accord with the purpose for which it was deposited." Id. The Hinds cited no authority

8

establishing that funds deposited into the court's registry pursuant to court order become subject to levy merely by virtue of their placement in the registry. The court has identified limited precedent involving attempts by the IRS to levy on unclaimed funds deposited on behalf of debtors. See In re Foster, No. 23-10003, 2024 Bankr. LEXIS 2683, at *7–8 (Bankr. S.D. Ala. Nov. 1, 2024) (permitting IRS to levy on debtor's unclaimed funds while acknowledging that this area of law remains unsettled); In re Brown, 280 B.R. 231, 234 (Bankr. E.D. Wis. 2002); but see In re Acosta, No. 14-5704 EAG, 2018 Bankr. LEXIS 2008, at *8–9 (Bankr. D.P.R. July 3, 2018) (denying IRS's attempt to levy on debtor's unclaimed funds to prevent a "race to the clerk's office" among creditors). Those cases are distinguishable, as they arise in the Chapter 13 context and implicate the treatment of undistributed plan payments under § 1326(a)(2) following dismissal of a case in which the IRS held a prepetition, perfected tax lien. Moreover, those cases do not involve funds claimed as exempt by a debtor. Accordingly, the court does not find those authorities persuasive on the issue presented here.

The court is also not persuaded that the mere deposit of the funds into the registry altered their exempt status. Although North Carolina's exemption statutes do not expressly address the treatment of proceeds in the manner that some states' exemption schemes do, North Carolina courts have long recognized that exemption statutes should be liberally construed in favor of debtors. See, e.g. In re Turnage, 644 B.R. 656, 662 (Bankr. W.D.N.C. 2022). Consistent with that principle, and absent authority holding otherwise, the court declines to conclude that the Exempt

Funds lose their exempt character solely by virtue of being deposited into the court's registry pursuant to court order.

The court acknowledges that the exempt status of the Exempt Funds is not indefinite. However, the court need not determine the precise point at which the exempt status is lost. The narrow issue before the court is whether the deposit of the Exempt Funds into the court registry changed their status or divested the Debtor of her entitlement to receive them. The court concludes that it does not but recognizes that the Hinds hold a nondischargeable claim against the Debtor. Once the Exempt Funds are released to the Debtor, the parties remain free to negotiate regarding the Exempt Funds, and, upon the conclusion of this bankruptcy case, the Hinds may pursue any rights and remedies available to them under applicable law.

## CONCLUSION

For the foregoing reasons, the court concludes that the Debtor is the person entitled to receive the Exempt Funds pursuant to 28 U.S.C. § 2042. Accordingly, the court **DENIES** the Motion.

**SO ORDERED**.

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court

10